The STATE of Ohio, Appellee,

v.

COMPTON, Appellant.

[Cite as *State v. Compton,* 153 Ohio App.3d 512, 2003-Ohio-4080.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–020659.

Decided Aug. 1, 2003.

**514**

Michael K. Allen, Hamilton County Prosecuting Attorney, and Judith Anton Lapp, Assistant Prosecuting Attorney, for appellee.

Chad C. Warwick, for appellant.

GORMAN, Judge.

{¶ 1} The defendant-appellant, Ross Compton, appeals from his conviction for disorderly conduct, in violation of either R.C. 2917.11(A)(3) or R.C. 2917.11(A)(5).[1] Although he was charged in the complaint with domestic violence, a violation of R.C. 2919.25(C), the trial court convicted Compton of disorderly conduct based upon its belief that it was a lesser-included offense. In his two assignments of error, Compton now contends that the judgment must be reversed because (1) disorderly conduct under either R.C. 2917.11(A)(3) or R.C. 2917.11(A)(5) is not a lesser-included offense of domestic violence, and (2) the trial court erred by not granting his Crim.R. 29 motion for acquittal on the charge of domestic violence given the conditionality of any threat that he had allegedly made to his ex-wife. We find the first assignment to be well taken. The second assignment is moot since the trial court acquitted Compton on the charge of domestic violence. Accordingly, we reverse Compton's conviction for disorderly conduct and discharge him from further prosecution.

{¶ 2} Compton and his former wife, Irene Bauer Compton, were divorced in February 2001. They had two sons, ages four and seven, with whom Compton was given scheduled visitation under a shared-parenting agreement. On September 1, 2002, when Compton came to pick up his sons to take them on a fishing trip, he and his former wife began to argue about a missing life vest. The argument continued as the boys sat waiting in the car. Mrs. Compton insisted that both boys should wear life vests while they were boating that day, and that

---

1. In convicting Compton of disorderly conduct, the trial court referred to both subsections in its comments from the bench, but on the judgment itself referred only to the general disorderly-conduct statute, R.C. 2917.11.

she had to see both life vests before allowing them to leave. Compton, who had packed only one life vest, testified that he planned to pick up a second life vest at his brother's house before setting out upon the lake. Rather than trying to convince his ex-wife of this, however, he admittedly used a rolled-up raincoat in the trunk of his automobile in an attempt to placate her, claiming that it was a second life vest. However, Mrs. Compton expressed her doubts and walked toward the rear of his automobile to look at it.

{¶ 3} Mrs. Compton testified that Compton then returned to the driver's seat and began backing his automobile toward her, yelling, "Get out of the way, bitch, or I'll drive you down with the car." Both boys began to cry. She testified that she began screaming for the police as Compton continued to steer the car toward her, although she conceded that the car was moving "at a very slow speed." Compton, on the other hand, denied that he was trying to back his automobile toward his ex-wife. He testified that he "inched" the vehicle back in an attempt to avoid striking her. According to Compton, he kept the car always at least a foot and a half away from his ex-wife, who kept attempting to block the car's path in an effort to stop him from leaving. He denied verbally threatening her.

{¶ 4} A neighbor who lived across the street testified that she heard shouting and looked through an open window to see Mrs. Compton shaking a sturdy piece of material (apparently the raincoat) and screaming, "This is not going to work." The neighbor said that she attempted to block the movement of the vehicle by standing against the back bumper and screaming, "Help, help." She testified that Compton twice got out of his automobile, gesturing with his hands in what the neighbor interpreted as an attempt to calm her down. The neighbor testified that the only loud voice she heard was that of Mrs. Compton. She stated that she did not hear Compton threaten his ex-wife.

{¶ 5} It was apparently undisputed that Compton finally capitulated to his ex-wife's concerns, stating, "Well I guess we have to go and buy a life vest * * *." With Mrs. Compton following him in her automobile, Compton drove first to Eastgate Pool and Spa Store, then to Walgreen's, and finally to a Dick's Sporting Goods store, where he was finally able to purchase a second life vest. After showing it to his former wife, he left with the boys for a boating expedition at Caesar's Creek.

{¶ 6} Two days after the incident, Mrs. Compton signed a complaint that charged Compton with domestic violence in violation of R.C. 2919.25(C). The statute makes it an offense for any person to knowingly cause a family or household member, by threat of force, to believe that he or she is in danger of imminent physical harm. The affidavit that accompanied the complaint accused Compton of having threatened to run over her during their argument over the life vests.

{¶ 7} In acquitting Compton of domestic violence, the trial court specifically found that the state had not proved the element requiring the offender to threaten the use of force. In reaching this conclusion, the trial court stated that it had been persuaded by the testimony of the neighbor that she did not hear Compton verbally threaten his ex-wife and that he appeared to be attempting to calm her down, not to frighten her, as they quarreled over the issue of the life vests.

{¶ 8} Although the trial court found Compton not guilty of domestic violence, it did not discharge him. Rather, expressing its belief that Compton had done something wrong to provoke the incident, the trial court found him guilty of disorderly conduct in violation of either R.C. 2917.11(A)(3) or R.C. 2917.11(A)(5), a minor misdemeanor, and fined him one hundred dollars. Although neither offense had been charged, the trial court reasoned that both offenses were lesser-included offenses of domestic violence. Compton's attorney unsuccessfully challenged this conclusion, and the trial court entered judgment accordingly.

{¶ 9} In his first assignment of error, Compton argues that the trial court erred, as a matter of law, in its finding that disorderly conduct under either R.C. 2917.11(A)(3) or R.C. 2917.11(A)(5) was a lesser-included offense of domestic violence under R.C. 2919.25(C). We agree.

{¶ 10} For an offense to be a lesser-included offense, certain requirements must be met. First, the offense must carry a lesser penalty than the greater offense. Second, the greater offense cannot, as statutorily defined, ever be committed without the lesser offense also being committed. And third, some element of the greater offense must not be required to prove the commission of the lesser offense. *State v. Deem* (1988), 40 Ohio St.3d 205, 533 N.E.2d 294, paragraph three of the syllabus.

{¶ 11} Under R.C. 2919.25(C), a person commits domestic violence when, by threat of force, he knowingly causes a family or household member to believe that he will cause imminent physical harm to the family or household member. Under R.C. 2917.11(A)(3), a person commits disorderly conduct when he recklessly causes inconvenience, annoyance, or alarm to another by "[i]nsulting, taunting, or challenging" that person under circumstances that are likely to provoke a violent response. Under R.C. 2917.11(A)(5), a person commits disorderly conduct by recklessly causing inconvenience, annoyance, or alarm to another by "[c]reating a condition that is physically offensive" to that person, or that presents a risk of physical harm to persons or property, by an act that serves no lawful or reasonable purpose.

{¶ 12} As a minor misdemeanor, disorderly conduct under either R.C. 2917.11(A)(3) or R.C. 2917.11(A)(5) satisfies two prongs of *Deem* in order to be a

lesser-included offense of domestic violence. Under the first prong, disorderly conduct carries a lesser penalty than domestic violence, which is a first-degree misdemeanor. Under the third prong, domestic violence requires proof that the offense was committed against a family or household member, which is not required to convict an accused of disorderly conduct under R.C. 2917.11(A). The difference between the culpable mental states—"knowingly" for domestic violence and "recklessly" for disorderly conduct—further supports the conclusion that latter is included in the former. Pursuant to R.C. 2901.22(E), the culpable mental state of "recklessly" is included in "knowingly." See Committee Comment to H.B. 511.

{¶ 13} The second prong of *Deem*, however, precludes the conclusion that disorderly conduct under either R.C. 2917.11(A)(3) or the second part of R.C. 2917.11(A)(5) is a lesser-included offense of domestic violence. The second prong requires that the greater offense can *never* be committed without also committing the lesser. Because the commission of domestic violence is not always "likely to provoke a violent response," an element of disorderly conduct under R.C. 2917.11(A)(3), domestic violence can be committed without committing disorderly conduct under that subsection. Similarly, because the elements of domestic violence require only a subjective risk—i.e., that a family or household member merely *believes* that the offender will cause imminent physical harm—domestic violence can also be committed without committing disorderly conduct under R.C. 2917.11(A)(5), which requires that there be an actual, not merely subjective, "risk of physical harm" to persons or property.

{¶ 14} Admittedly, there are factual scenarios in which a person committing domestic violence may, at the same time, commit a form of disorderly conduct. When a person threatens a household member with force, causing a belief of imminent physical harm, that person also commits disorderly conduct by recklessly causing alarm to another by creating a condition that is physically offensive to that person, as provided in the first part of R.C. 2917.11(A)(5). The second prong of *Deem*, it should be noted, does not require the elements of the greater and the lesser-included offenses to be stated in identical language. Clearly, if the victim of domestic violence believes that "the offender will cause imminent physical harm to a family or household member," a fortiori, the offender has caused the victim alarm by creating a condition that is "physically offensive" to that person, and has thus committed this particular form of disorderly conduct.

{¶ 15} However, even with an allowance for this one narrow instance in which the two offenses statutorily coincide, the trial court's findings do not allow the conclusion that this is what happened here. The trial court expressly found that the state had failed to prove that Compton had threatened his wife with physical force. Indeed, the absence of a threat of force was the reason that the

trial court acquitted Compton of the charge of domestic violence. Consequently, the one scenario in which the same conduct necessarily constitutes both domestic violence and disorderly conduct was effectively precluded by the trial court's factual findings.

{¶ 16} What the trial court appears to have done, in order to convict Compton of something, was mix together a number of elements drawn from both R.C. 2917.11(A)(3) and R.C. 2917.11(A)(5). From the court's comments, it appears that it found Compton guilty for saying nonthreatening things that caused his ex-wife alarm for the safety of their children *if* they went out on the lake without a life vest for each. This conduct was certainly not the same alleged conduct for which he had been charged with domestic violence. The result was the very situation described by Judge Painter in a previous decision of this court, in which the "defendant walked into court· charged with one crime, but walked out convicted of a totally different offense." *State v. Moore* (2001), 145 Ohio App.3d 213, 214–215, 762 N.E.2d 430.

{¶ 17} In sum, given the trial court's finding that Compton had never verbally or physically threatened his wife, disorderly conduct under either R.C 2917.11(A)(3) or R.C. 2917.11(A)(5) was not a lesser-included offense of the domestic violence with which Compton was charged.

{¶ 18} We also note that, even if it is assumed that disorderly conduct under R.C. 2917.11(A)(3) or R.C. 2917.11(A)(5) was a lesser-included offense of domestic violence, there was insufficient evidence to convict him of either.

{¶ 19} Sufficiency of the evidence is essentially a test of adequacy and asks not whether the state's evidence is to be believed, but whether if it is believed, it is sufficient to support a conviction. See *State v. Thompkins*, (1997), 78 Ohio St.3d 380, 390, 678 N.E.2d 541. In finding Compton guilty of disorderly conduct absent a threat of force to his ex-wife, the trial court attempted to combine disparate elements under R.C. 2911.17(A)(3) and (A)(5) to create a form of disorderly conduct to match the facts. The court appears to have convicted Compton not on the basis of any threat to his former wife, but because he upset her by creating a risk of physical harm to the couple's children, at least to his ex-wife's thinking, by starting out on a fishing trip with only one life vest in the trunk of the car.

{¶ 20} We disagree with the argument of the state that Mrs. Compton's shouting of the word "help" constituted a violent response for the purposes of subsection (A)(3). Calling for help is simply not a violent response, nor is standing in the way of a car. Absent the element of threat by Compton, we find no evidence that his conduct was "likely to provoke a violent response." The state's position is tantamount to adopting a rule that every argument is likely to

end in violence, in which case everyone is guilty of disorderly conduct whenever they engage in a shouting match. The state's position, if accepted, would allow the state to regulate family disputes to a far greater degree than that presently allowed under R.C. 2919.25(C), punishing not only domestic violence, but also domestic discord.

{¶ 21} As for the element of personal risk required for disorderly conduct under subsection (A)(5), allowing a child to go into a boat without a life vest has, concededly, the potential for serious consequences. However, the evidence in the record of Compton's conduct does not rise to the level of criminal recklessness. "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C). "Risk" is defined under R.C. 2901.01(A)(7) as "a significant possibility, as contrasted with a remote possibility, that a certain result may occur or that certain circumstances may exist." Compton testified without contradiction that because he was behind schedule, he resorted to the rolled-up raincoat to placate his former wife. He testified that he intended to obtain another "appropriate" life vest when he arrived at his brother's residence. Even if it is assumed that the trial court found this testimony self-serving and untrustworthy, it cannot be said that Compton's failure to obtain a second vest would have caused a *likelihood* that one of his sons would have suffered injury as a result of being without a life vest. In this regard, we note that the state did not present any compelling evidence to demonstrate the likelihood of a person on a boat without a life vest suffering injury. Although Compton's conduct may have been sufficiently ill advised to alarm his former wife, whose concern for the welfare of her children cannot be criticized, it was not proof of a criminal offense within the contemplation of either R.C. 2917.11(A)(3) or R.C. 2917.11(A)(5).

{¶ 22} Accordingly, because we have validated Compton's first assignment of error, the judgment of the trial court is reversed and Compton is discharged from further prosecution.

Judgment reversed
and appellant discharged.

SUNDERMANN, P.J., and HILDEBRANDT, J., concur.