DECISION.
{¶ 1} Defendant-appellant Barbara Wolf was charged with obstructing official business, in violation of R.C. 2921.31. Wolf waived her right to a jury trial and proceeded to a trial before the court. Wolf moved for a judgment of acquittal pursuant to Crim.R. 29. The trial court acquitted Wolf of obstructing official business, but found her guilty of disorderly conduct, in violation of R.C. 2917.11, purportedly as a lesser-included offense.
 {¶ 2} Wolf now appeals. In her first assignment of error, Wolf argues that the trial court erred by overruling in part her Crim.R. 29 motion. In her second assignment of error, Wolf argues that the trial court erred by convicting her of disorderly conduct. We agree with the latter contention. Accordingly, we sustain the second assignment of error. Our disposition of the second assignment of error renders the first assignment of error moot.
 The Evidence At Trial {¶ 3} At trial, Cincinnati Police Lieutenant Doug Wiesman testified that, on March 20, 2003, he had been summoned by fellow officers to the area of Fountain Square because hundreds of people were gathering to engage in a protest demonstration. Lieutenant Wiesman approached a man who appeared to be giving instructions to the crowd and told him that the group could not conduct a protest demonstration on the square because the group did not have a permit to do so.
 {¶ 4} Soon the crowd began to walk toward a downtown building as part of the protest. The police monitored the crowd to ensure that the streets remained open for rush-hour traffic, and that members of the crowd stayed on the sidewalk as they walked. The crowd remained at the building for approximately forty-five minutes. During this time, the crowd swelled to more than 500 people. Many in the crowd began to walk westbound on East Fifth Street toward Fountain Square.
 {¶ 5} Lieutenant Wiesman was standing on the south side of East Fifth Street when he saw Wolf and a man locked arm in arm as they stood in the middle of the street. Lieutenant Wiesman described East Fifth Street as a four-lane, one-way road that ran eastbound. He stated that every lane was full of traffic as far west as he could see. The lieutenant also stated that the traffic in the lane that was blocked by Wolf was unable to move.
 {¶ 6} At that point, Lieutenant Wiesman walked out into the street and held Wolf's right arm. He told her that she had to leave the street, that she was stopping traffic, and that she could continue her protest from either the sidewalk or the square. The lieutenant testified that Wolf's conduct posed a dangerous threat to her own safety, as well as to the safety of the drivers on the street. He testified that his duty at the time was to keep traffic flowing and to maintain the safety of the protestors, as well as those driving on the street.
 {¶ 7} Lieutenant Wiesman asked Wolf at least three times to move: "I pleaded with her, I said, `Ma'am, please, I do not want to arrest you today. Can you please conduct your protest from the sidewalk or Fountain Square? * * * I was very kind and generous and I tried to convince her to do that. She would not do that." Wolf refused to move. The lieutenant testified that, as he spoke to Wolf and held her by the arm, Wolf offered resistance several times. Lieutenant Wiesman testified that he was unable to get traffic moving again on East Fifth Street until he and another officer removed Wolf and the man from the street.
 {¶ 8} The trial court heard further evidence from a second police officer. The court also admitted photographic and videotape evidence of the events.
 Disorderly Conduct Was Not a Lesser-Included Offense {¶ 9} In her second assignment of error, Wolf argues that the trial court erred by convicting her of disorderly conduct because it was not a lesser-included offense of obstructing official business. In its brief, the state acknowledges that it has found no authority to support the trial court's determination.
 {¶ 10} Under R.C. 2921.31(A), a person obstructs official business when, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, the person does any act that hampers or impedes the public official in the performance of the public official's lawful duties.
 {¶ 11} On the other hand, R.C. 2917.11(A), the disorderly-conduct statute, provides the following: "(A) No person shall recklessly cause inconvenience, annoyance, or alarm to another by doing any of the following: (1) Engaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior; (2) Making unreasonable noise or an offensively coarse utterance, gesture, or display or communicating unwarranted and grossly abusive language to any person; (3) Insulting, taunting, or challenging another, under circumstances in which that conduct is likely to provoke a violent response; (4) Hindering or preventing the movement of persons on a public street, road, highway, or right-of-way, or to, from, within, or upon public or private property, so as to interfere with the rights of others, and by any act that serves no lawful and reasonable purpose of the offender; (5) Creating a condition that is physically offensive to persons or that presents a risk of physical harm to persons or property, by any act that serves no lawful and reasonable purpose of the offender."
 {¶ 12} The trial court did not specify which subsection of R.C. 2917.11 Wolf had violated. The allegations in the complaint were that Wolf's refusal to desist from interlocking arms with another while officers attempted to remove Wolf from a lane of traffic had hampered the police officers in the performance of their duties. There was no evidence that would have supported convictions under R.C. 2917.11(A)(1), (2), or (3). For purposes of this appeal, we presume that the court believed that Wolf had violated subsection (A)(4) or (A)(5).
 {¶ 13} In State v. Deem,[1] the Supreme Court of Ohio adopted a three-pronged test to determine whether a criminal offense is a lesser-included offense of another. The Deem court held that a criminal offense is a lesser-included offense of another if (1) the offense carries a lesser penalty than the other; (2) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense also being committed; and (3) some element of the greater offense is not required to prove the commission of the lesser offense.[2]
 {¶ 14} The first prong of the Deem test was satisfied in this case. Obstructing official business is a misdemeanor of the second degree.[3] Under R.C. 2917.11(E)(2), a disorderly-conduct violation is ordinarily a minor misdemeanor, but the trial court in this case convicted Wolf under R.C.2917.11(E)(3)(c), which makes a disorderly-conduct violation a misdemeanor of the fourth degree where the offense is committed in the presence of any law enforcement officer who is engaged in his or her duties at the scene of an emergency.
 {¶ 15} The third prong of the Deem test was also satisfied in this case because obstructing official business requires proof that the offender had a purpose to prevent, obstruct, or delay a public official's performance of an authorized act, and that the offender committed an act that hampered the performance of the public official's duties. These elements are not required to prove that an offender committed disorderly conduct in violation of R.C. 2917.11(A)(4) or (5).
 {¶ 16} But, under the second prong of the Deem test, disorderly conduct is not a lesser-included offense of obstructing official business because a person can commit the latter offense without committing disorderly conduct. While in some cases, charges of disorderly conduct and obstructing official business may be predicated upon the same conduct by an offender, the commission of obstructing official business does not always involve the commission of disorderly conduct. Obstructing official business involves conduct that hampers a public official's duties, while disorderly conduct need not involve a public official.
 {¶ 17} In this case the "defendant walked into court charged with one crime, but walked out convicted of a totally different offense."[4] Our review of the record convinces us that the evidence presented to the trial court easily supported a conviction for obstructing official business. Wolf's conduct in standing before a lane of rush-hour traffic was a serious impediment to the police officers' duties of maintaining safety and order. Not only was Wolf's conduct foolish, but it also posed a dangerous threat to her own safety as well as the safety of others. But since the trial court acquitted her of the charge of obstructing official business, we are left with the court's legally incorrect finding that Wolf was guilty of disorderly conduct as a lesser-included offense.
Accordingly, we must sustain the second assignment of error, reverse the judgment of the trial court, and order Wolf discharged from further prosecution in this case.
Judgment reversed and appellant discharged.
Hildebrandt and Gorman, JJ., concur.
[1] (1988), 40 Ohio St.3d 205, 533 N.E.2d 294.
[2] Id. at paragraph three of the syllabus; see, also, Statev. Barnes, 94 Ohio St.3d 21, 25, 2002-Ohio-68, 759 N.E.2d 1240;State v. Compton, 153 Ohio App.3d 512, 2003-Ohio-4080,794 N.E.2d 771.
[3] See R.C. 2921.31(B) (a violation of the statute is a felony of the fifth degree if it creates a risk of physical harm to a person).
[4] See State v. Moore (2001), 145 Ohio App.3d 213, 214-215,762 N.E.2d 430.