**[Cite as *State v. Martiniez*, 2022-Ohio-1736.]**

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Earle E. Wise, Jr., P.J. |
| Plaintiff-Appellee | : | Hon. W. Scott Gwin, J. |
| | : | Hon. William B. Hoffman, J. |
| -vs- | : | |
| | : | |
| MALIK MARTINEZ - JOE HALL | : | Case No. 2021CA00153 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Municipal Court,
                                                          Case No. 2021 CRB 2582


JUDGMENT:                                       Affirmed


DATE OF JUDGMENT:                     May 23, 2022


APPEARANCES:

For Plaintiff-Appellee                          For Defendant-Appellant

TARYN A. DOUGLAS                          BERNARD L. HUNT
218 Cleveland Avenue SW                 2395 McGinty Road NW
Canton, OH  44701-4218                    North Canton, OH  44720

*Wise, Earle, P.J.*

{¶ 1}   Defendant-Appellant Malik Hall appeals the November 18, 2021 judgment of the Canton Municipal Court finding him guilty of one count of inducing panic following a jury trial. Plaintiff-Appellee is the city of Canton.

Facts and Procedural History

{¶ 2}   On October 28, 2021, Canton Police Officer Kim Elliott was driving down Tuscarawas Street West in Canton, Ohio when he was flagged down by a male pedestrian. Elliott stopped and the man pointed behind Elliott, advising there was a man walking down the street with an AK-47. Elliott looked in his rearview mirror and saw appellant walking in the opposite direction with something in his hand. Elliott contacted dispatch and advised he was going to investigate.

{¶ 3}   While that was happening, Canton police 911 dispatch received several calls regarding appellant walking down Tuscarawas Street waiving around two weapons and pointing them at passing traffic. One couple reported they saw appellant climb onto a tree stump and point the AK-47 at passing traffic. Alarmed, they drove away quickly and called police. Motorists on Tuscarawas were honking their horns to alert others to appellant's presence. Three eyewitnesses who later testified at trial stated they feared for their safety.

{¶ 4}   Officer Elliott drove up behind appellant with his cruiser lights activated. He saw appellant had a long gun in one hand and a pistol in the other and was walking towards a woman seated on the steps of St. Joseph's Church. Elliott exited his cruiser, drew his weapon, and ordered appellant to drop the guns and get on the ground.

Appellant complied. Once appellant was on the ground, and upon closer inspection, Elliott could see that although they had been modified to look real, the guns were fake. Several officers including the shift sergeant arrived to assist Elliott. Appellant was taken into custody without incident. The woman seated on the steps was appellant's girlfriend.

{¶ 5}   Appellant was later charged with one count of inducing panic pursuant to R.C. 2917.31(A)(3), a misdemeanor of the first degree. Appellant pleaded not guilty and the matter proceeded to a jury trial on November 18, 2021. Before trial the trial court asked the state what predicate offense it intended to present. The state indicated it would present evidence of disorderly conduct pursuant to R.C. 2911.11(A). The trial court granted the state's Motion for Specific Jury Instruction which required the jury to find appellant caused serious public inconvenience or alarm by committing the offense of disorderly conduct.

{¶ 6}   The state called eight witnesses including two dispatchers who received 911 calls regarding appellant's behavior, three eyewitnesses, and three officers who managed the incident.

{¶ 7}   Appellant testified on his own behalf. He testified he was not pointing the toy guns at passing traffic, but rather at birds, pretending to shoot them. He also testified that when his girlfriend went into McDonald's to get them food earlier that day, he stayed outside because he did not want to scare the employees with the guns. He further explained that the orange tip on one of the guns had been removed to make it appear more realistic.

{¶ 8}   At the conclusion of state's evidence, counsel for appellant made a Crim.R. 29 motion for acquittal arguing because the state failed to charge appellant with disorderly

conduct and in any event had failed to prove disorderly conduct. The trial court overruled the motion. After deliberating, the jury returned a guilty verdict.

{¶ 9} Appellant filed an appeal and the matter is now before this court for consideration. He raises one assignment of error as follows:

I

{¶ 10} "THE TRIAL COURT COMMITTED REVERSABLE ERROR WHEN IT FAILED TO GRANT APPELLANT'S RULE 29, MOTION FOR AQUITTAL."

{¶ 11} In his sole assignment of error, appellant argues the trial court erred by denying his Crim.R. 29 motion for acquittal. We disagree.

{¶ 12} Crim.R. 29 governs motion for acquittal. Subsection (A) states the following:

> The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.

{¶ 13} The standard to be employed by a trial court in determining a Crim.R. 29 motion is set out in *State v. Bridgeman*, 55 Ohio St.2d 261, 381 N.E.2d 184 (1978), syllabus: "Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as

to whether each material element of a crime has been proved beyond a reasonable doubt."

{¶ 14} Appellant's argument raises a question of sufficiency. On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶ 15} Appellant was convicted of one count of inducing panic in violation of R.C. 2917.31(A)(3) which prohibits causing serious public inconvenience or alarm by committing an offense with reckless disregard of the likelihood that its commission will cause serious public inconvenience or alarm. The state alleged appellant committed disorderly conduct in violation of R.C. 2917.11 with reckless disregard that its commission would cause public inconvenience or alarm. That section provides in relevant part:

> (A) No person shall recklessly cause inconvenience, annoyance, or
> alarm to another by doing any of the following:
> * * *
> (4) Hindering or preventing the movement of persons on a public
> street, road, highway, or right-of-way, or to, from, within, or upon
> public or private property, so as to interfere with the rights of others,

and by any act that serves no lawful and reasonable purpose of the offender;

(5) Creating a condition that is physically offensive to persons or that presents a risk of physical harm to persons or property, by any act that serves no lawful and reasonable purpose of the offender.

{¶ 16} "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C).

{¶ 17} Appellant argues the trial court erred in denying his Crim.R. 29 motion for acquittal because the state failed to charge or prove the predicate offense of disorderly conduct.

{¶ 18} First, appellant points to no authority which would support a conclusion that the state must charge a predicate offense. Appellant does cite *State v. Geary*, 2016-Ohio-7001, 72 N.E.3d 153, (1st Dist.) for its finding that "committing any offense is an essential *element* of inducing panic which must be proven beyond a reasonable doubt." *Geary* at ¶ 5, emphasis added, citing *In re P.T.*, 2013-Ohio-3881, 995 N.E.2d 279, ¶ 26; *State v. Weber*, 5th Dist. Stark No. 2007 CA 00334, 2009-Ohio-1344, 2009 WL 765482, ¶ 29. We agree. Committing a predicate offense is an element of inducing panic. The predicate offense need not be separately charged.

{¶ 19} Appellant next argues the city failed to prove any element of inducing panic.

{¶ 20} Testimony presented in the city's case-in-chief established the City of Canton's 911 dispatch center received numerous calls regarding a man walking up and down Tuscarawas Street West waving around an assault rifle and a pistol and pointing the weapons at traffic. One caller believed the guns were fake, but a woman in the background of the same call believed they were real. Transcript of trial (T.) 131-140. The 911 calls were played for the jury. City's exhibits 1 and 2.

{¶ 21} Officer Kim Elliot, a 32-year veteran of the Canton Police Department, testified he was driving down Tuscarawas Street when a male pedestrian waived him down to nervously point out a man walking down the street with an assault rifle. T. 144-145. Alarmed himself, Elliott went to investigate and saw appellant with a long gun in one hand, a pistol in the other and walking towards a woman seated on the steps of St. Joseph's Church. Concerned for the woman, Elliott got out of his cruiser and ordered appellant to drop the weapons and get on the ground. It was not until appellant dropped the weapons that Elliott knew they were fake. T 148-149. Before stopping appellant, Elliott observed appellant pointing the weapons toward the street and demonstrated for the jury. T. 151-152.

{¶ 22} Joe Hunter was driving home on Tuscarawas Street when he saw appellant on the sidewalk with an assault rifle. Scared and alarmed for any school children who may have been present at St. Joseph's, he drove around to the block so he could see where the man was going. He parked his truck, got out, and hid behind a stairwell wall in case appellant opened fire. At the same time, he saw Elliott arrive. Hunter stayed until appellant was secured and gave a statement to responding officers. Hunter testified he

was offended, alarmed, intimidated, and inconvenienced by the situation which he believed presented a risk of physical harm. T. 183-188.

{¶ 23} Mikel Willis and Solomon Collins were traveling down Tuscarawas Street on a shopping trip when they saw appellant walking with an assault rifle. Willis was initially unconcerned because appellant had the muzzle of the gun pointed upwards. But then she saw appellant climb onto a tree stump and point the weapon into oncoming traffic. Both she and Collins feared he would start shooting and "kind of freaked out." Her initial reaction was to call police but she and Collins wanted to remove themselves from the situation and get to a place of safety first. Traffic was heavy and other motorists began honking their horns in warning. The two drove away from the scene quickly and turned down a side street to get out of the line of fire. From there they called 911. They were asked to go to the scene and give a statement to officers. They did so and their statements were captured by one of the responding officer's body camera and played for the jury. T. 192-193, 198-201, city's exhibit 4.

{¶ 24} Responding Canton Police Sergeant Steven Shankle testified the incident caused public alarm as the department fielded many 911 calls. He further testified that a passerby would not be able to determine that the weapons appellant was carrying and pointing at traffic were fake. T. 239-241.

{¶ 25} Appellant testified on his own behalf. He did not deny he pointed the gun towards traffic, but stated he was pretending to shoot birds and other animals. T. 262-263. He admitted to getting on the tree stump and pointing the weapons toward traffic, but again stated he was pretending to shoot birds. T. 281. He later stated he did not point the guns at any people. T. 169. He then admitted Officer Elliott's description and

demonstration of how he was holding the weapons while walking down Tuscarawas Street was accurate. T. 272. Appellant testified that earlier in the day he had not gone into McDonald's with his girlfriend because he did not want to alarm the people inside with the guns. T. 273, 284. He also testified the long gun had been modified to look realistic. T. 277, 283-284.

{¶ 26} We find the forging evidence, when viewed in a light most favorable to the prosecution, sufficient to prove the charge of inducing panic and disorderly conduct. Certainly, pointing a realistic looking weapon into oncoming traffic is reckless and caused panic and public alarm as evidenced by the 911 calls and the testimony of Hunter, Willis and Collins. Moreover, these witnesses testified they found this threat of force physically offensive. See *State v. Compton*, 153 Ohio App.3d 512, 2003-Ohio-4080, 794 N.E.2d 771¶ 14 (threatening another with force, causing a belief of imminent physical harm constitutes disorderly conduct by recklessly causing alarm to another by creating a condition that is physically offensive to that person, as provided in the first part of R.C. 2917.11(A)(5)). Each witness presented by the state testified the situation caused inconvenience, annoyance, or alarm. Accordingly, the trial court did not err in denying appellant's Crim.R. 29 motion for acquittal.

{¶ 27} The sole assignment of error is overruled.

{¶ 28} The judgment of conviction and sentence is affirmed.

By Wise, Earle, P.J.

Gwin, J. and

Hoffman, J. concur.

EEW/rw