OPINION *Page 2 
{¶ 1} Appellant, Kevin J. Weber, appeals his conviction for one count of inducing panic and one count of domestic violence. Appellee is the State of Ohio.
 STATEMENT OF FACTS AND CASE {¶ 2} On September 7, 2007, appellant was living in an apartment in North Canton with Kimberly Burzycki, his girlfriend of about nine months. Appellant met Burzycki when he was delivering furniture to her friend's house. In June of 2007, appellant lost his job and moved in with Burzycki. She covered all living expenses.
 {¶ 3} The relationship was rocky and Burzycki decided in early September to break up with appellant. She discussed the problems with her mother, who encouraged her to break off the relationship. Burzycki decided she would break up with appellant on September 7 at a bonfire at his brother's house.
 {¶ 4} When Burzycki returned home from work on September 7, appellant told her their plans for the evening had changed. While she was in the bathroom, appellant saw a message on her cell phone from her mother concerning her plan to break up with him. He kicked the door open, and while she was sitting on the toilet asked her, "What's this plan you have? Are you going to break up with me?" Tr. 28. She told him she would discuss the matter when she got out of the bathroom.
 {¶ 5} When Burzycki came out of the bathroom, she went into the bedroom with appellant and told him she couldn't do this anymore. He grabbed her by the straps of her tank top and shoved her against the wall, repeatedly yelling and asking her how she could do this to him. Appellant threw Burzycki on the bed and got on top of her, *Page 3 
continuing to yell at her. Finally, appellant let Burzycki get up. He started to cry and said he thought she loved him.
 {¶ 6} Appellant got off the bed and grabbed a gun from his duffle bag. He held the gun, which Burzycki knew to be loaded, to his head and said, "Tell me it's over. I'll kill myself." Tr. 32. Burzycki tried to talk appellant into putting the gun down. After 5-10 minutes, he put the gun down and tried to hug Burzycki.
 {¶ 7} Burzycki needed to leave to take her cat to the veterinarian for a scheduled appointment. Appellant insisted on going with her. After the veterinarian examined the cat, appellant and Burzycki left the veterinarian's office to drive home. At a red light, appellant got out of the car to walk. Concerned for appellant's safety and the safety of others in light of his state of mind, Burzycki went back to try to talk him into getting in the car. Appellant eventually got back into the car and the couple returned to their apartment.
 {¶ 8} After returning home, the couple began to argue again. Appellant found a message on Burzycki's cell phone from a friend asking if she had broken up with appellant. Appellant asked Burzycki if she was going to call the police. When she said no, he replied, "Well, go ahead and call the police. I'll come out shooting. I won't go down without a fight." Tr. 38.
 {¶ 9} Burzycki went outside to get her mail. She met her parents outside, who had arrived to help her change the locks. When she explained the situation with appellant and the gun, her mother wanted to call the police. Burzycki went back inside to get her cat and her purse and then planned to leave with her parents. *Page 4 
 {¶ 10} When Burzycki went back inside the apartment, appellant locked the door behind her. She told him her parents were outside and appellant went outside to check. While he was gone, Burzycki grabbed her purse, her cat, and her work bag, and ran outside to her parents' car. Her mom was on the phone with the police.
 {¶ 11} Patrolman Frank Kemp of the North Canton Police Department arrived on the scene. He met with Burzycki and her mother. They explained that appellant had threatened to kill himself and had said if the police came he would come out shooting. The police locked down the walkway to the apartment and sealed off the area, turning away residents of the apartment building who intended to return to the building. Police called the special response team, including a hostage negotiator.
 {¶ 12} The police officers cleared the apartment and did not find appellant inside. Eventually, they received a telephone report of a man matching appellant's description walking quickly on a side street. The man was talking on a cell phone, asking someone to come and get him because the cops were after him. Police canvassed the neighborhood and alerted other local jurisdictions that appellant was suicidal, possibly armed, and recently stated that if he encountered police he would come out shooting.
 {¶ 13} After clearing the apartment, police brought Burzycki and her family back inside for their own safety. Burzycki checked appellant's duffle bag and found a loaded .25 caliber pistol and two hunting knives. She told police that appellant kept an Uzi in a safe in the garage. When Patrolman Kemp checked the unlocked safe in the garage, he did not find a weapon, but did find a pipe fashioned from aluminum foil which smelled like marijuana. He also found box for a cleaning kit for a firearm labeled 9 millimeter *Page 5 
thirty-eight caliber, which would be consistent with a weapon such as an Uzi. He checked the duffle bag in the apartment and found a baggie containing marijuana.
 {¶ 14} Appellant was charged with one count of domestic violence in violation of R.C. 2919.25 and one count of inducing panic in violation of R.C. 2917.31. The case proceeded to jury trial in the Canton Municipal Court.
 {¶ 15} After the presentation of evidence, appellant was found guilty on both charges. Appellant was sentenced to a serve a one hundred and eighty day jail sentence on each count. As to the inducing panic charge, appellant's sentence was suspended on condition of good behavior for two years and compliance with counseling upon release.
 {¶ 16} Appellant now appeals from his judgment of conviction setting forth the following assignments of error:
 {¶ 17} "I. THE TRIAL COURT ERRED WHEN IT FAILED TO INSTRUCT THE JURY ON ALL THE ESSENTIAL ELEMENTS OF THE OFFENSE OF INDUCING PANIC THEREBY DENYING APPELLANT HIS RIGHT TO DUE PROCESS UNDER THE FIFTH ANDFOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION.
 {¶ 18} "II. APPELLANT'S CONVICTION FOR INDUCING PANIC WAS BASED ON INSUFFICIENT EVIDENCE.
 {¶ 19} "III. APPELLANT WAS DEPRIVED OF EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ART. 1 SECT. 10 OF THE OHIO CONSTITUTION. *Page 6 
 {¶ 20} "IV. THE TRIAL COURT COMMITTED ERROR IN FAILING TO PERMIT THE APPELLANT THE RIGHT OF ALLOCUTION."
 I {¶ 21} In the first assignment of error, appellant argues that the trial court committed plain error by failing to instruct the jury on every element of the offense of inducing panic.
 {¶ 22} R.C. 2917.31(A) defines the offense of inducing panic:
 {¶ 23} "(A) No person shall cause the evacuation of any public place, or otherwise cause serious public inconvenience or alarm, by doing any of the following:
 {¶ 24} "(1) Initiating or circulating a report or warning of an alleged or impending fire, explosion, crime, or other catastrophe, knowing that such report or warning is false;
 {¶ 25} "(2) Threatening to commit any offense of violence;
 {¶ 26} "(3) Committing any offense, with reckless disregard of the likelihood that its commission will cause serious public inconvenience or alarm."
 {¶ 27} The trial court instructed the jury as follows concerning the charge of inducing panic:
 {¶ 28} "The accused is also charged with inducing panic. Before you can find the accused guilty, you must find beyond a reasonable doubt that on or about September 7, 2007, Stark County, city of North Canton, Hoover Township, in the state of Ohio, the accused recklessly caused the evacuation of any public place or otherwise caused serious public inconvenience or alarm. A person acts recklessly when with headless (sic) indifference to the consequences he perversely disregards a known risk that his conduct is likely to cause a certain result or be of a certain nature. A person is reckless *Page 7 
with respect to the circumstances when with heedless indifference to the consequences he perversely disregards a known risk that such circumstances are likely to exist. Cause is the act or failure to act which in the natural and continuous sequence directly produces the physical harm and without which it would not have occurred. Cause occurs when the physical harm is the natural and foreseeable result of the act or failure to act. If you find that the State of Ohio proved beyond a reasonable doubt all the essential elements of inducing panic, your verdict must be guilty. If you find that the State of Ohio failed to prove beyond a reasonable doubt any one of the essential elements of the offense of inducing panic, your verdict must not be guilty." Tr. 119-120.
 {¶ 29} The trial court neglected to instruct the jury on an essential element of the offense when the court failed to instruct the jury that they must find appellant caused evacuation of a public place or serious public inconvenience or harm by committing one of the acts specified in subsections (1), (2), or (3) of R.C. 2917.31(A). Although the complaint does not specifically define which subsection the state is proceeding under, at trial, the state's theory of the case was clearly that appellant violated the statute by threatening to commit any offense of violence. Ohio Jury Instruction 517.31 not only provides that the court is to instruct the jury as to the appropriate alternative between the three subsections of the statute, but states that, as to (A)(2), the court is to define the offense of violence after the court determines as a matter of law whether the threat involved an offense of violence. Further, the record does not reflect that the jury was read the complaint or given the complaint, which defined the offense properly, and the verdict form states generally that the jury finds appellant "guilty of inducing panic." *Page 8 
Thus, the record demonstrates that the jury was never instructed on all of the elements of the offense of inducing panic.
 {¶ 30} While the trial court erred in failing to properly instruct the jury concerning all the elements of the offense, appellant failed to object to the instruction at trial. We therefore must analyze the instruction under a plain error standard of review pursuant to Crim. R. 52(B). State v. Wamsley, 117 Ohio St. 3d 388, 391, 2008-Ohio-1195.
 {¶ 31} In Wamsley, the appellant was convicted of aggravated burglary. The trial court failed to instruct the jury on the culpable mental state of the underlying offense of trespass, and also on all the elements of the underlying offense of assault. The Ohio Supreme Court reversed the decision of the Court of Appeals, which had found error in the instruction, holding that the Court of Appeals improperly used a hybrid of structural-error and plain-error analysis, and the faulty instruction did not render the trial so fundamentally unfair that it could not be a reliable vehicle for the determination of the defendant's guilt or innocence. Id. at ¶ 24-25. Failure to instruct on each element of an offense is not necessarily reversible as plain error, and the appellate court must review the instructions as a whole and the entire record to determine whether a manifest miscarriage of justice has occurred as a result of the error in the instructions. Id. at ¶ 17, citing State v.Adams (1980), 62 Ohio St. 2d 151, paragraph three of the syllabus.
 {¶ 32} In order to find plain error, the appellate court must find that: (1) there was an error, i.e. a deviation from a legal rule, (2) the error was "plain" in that it presents an obvious defect in the trial proceeding, and (3) the error affected a "substantial right" meaning that it affected the outcome of the trial. State v. Johnson, Franklin App. No. 06AP-878, 2007-Ohio-2792. Even where the defendant shows that an error not *Page 9 
objected to at trial affects his or her substantial rights, the appellate court has discretion to disregard the error and should correct it only to prevent a manifest miscarriage of justice. State v.Wamsley, supra, quoting State v. Long (1978), 53 Ohio St. 2d 91, 372
N.E. 2d 804, paragraph three of the syllabus; State v. O'Connor, Fayette App. No. CA2007-01-005, 2008-Ohio-2415. Plain error under Crim. R. 52(B) is to be taken "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Long, supra.
 {¶ 33} Throughout the trial, the State's theory of the case and the evidence presented alleged that appellant caused serious public inconvenience and alarm by threatening to commit a crime of violence against responding officers. Such behavior would be a violation of R.C. 2917.31(A)(2). In opening statement, appellee told the jury that appellant was charged with inducing panic because of the threats he made. Tr. 19. The victim testified that appellant put a gun to his head and threatened to kill himself or shoot any officers that might respond to her call. The victim further testified that she had informed officers of appellant's behavior and threats of violence. Patrolman Kemp testified that the police locked down the walkway and secured the area because of what they learned from the victim and her mother concerning appellant's threat to come out shooting if the police arrived. He testified that they believed appellant was in the apartment at the time. In closing argument, the state argued that the police were required to lock down the apartment complex, get people out of their apartments, and call in a hostage squad because appellant talked about "taking out officers." Tr. 109.
 {¶ 34} Appellant's strategy at trial appeared to be to challenge whether the heightened police response was reasonable in light of the fact that they relied solely on *Page 10 
the victim's statement. In opening statement, counsel for appellant told the jury that they were going to wonder why the police would come out and do all these things based on one person's statement, without further investigation. Tr. 20. Appellant presented no evidence at trial. When counsel cross-examined Ptl. Kemp, she questioned the officer concerning the threats made by appellant, and asked if appellant made "any direct threats against anybody who had been there at the time this threat was allegedly made." Tr. 77. The officer answered that there were no direct threats and, on further questioning, reiterated his testimony that the threat as relayed to him by the victim was that if the police came, appellant would come out shooting. In closing argument, counsel for appellant again argued that, based on the statement of one person, police decided to call out hostage negotiators and other officers without first making face-to-face contact with appellant or investigating further. Tr. 116. While appellant attacked the credibility of the victim, his focus appeared to be on whether the police overreacted to the threat without talking to him or checking the apartment first.
 {¶ 35} When the jury found that appellant recklessly caused public inconvenience or alarm, the only evidence in the record from which they could have made this finding is if they believed the testimony that appellant threatened to come out shooting if the police were called. There was no other evidence presented as to why the police responded in the manner described at trial. Further, the jury returned with a question during deliberations, asking whether they were deciding "whether he intended to induce panic or whether he did induce panic." Tr. 124. At that point, the court read the original instruction concerning the offense of inducing panic, as quoted above. It appears from the jury's question that their focus was on whether appellant could be found guilty if he *Page 11 
didn't intend to cause the actions taken by the police in response to his conduct and not whether appellant engaged in the conduct which caused the police to lockdown the apartment complex.
 {¶ 36} Based on the state of the record, we cannot find that the error affected the outcome of the trial. The error in the jury instruction did not rise to the level of plain error. The first assignment of error is overruled.
 II {¶ 37} In the second assignment of error, appellant argues that the conviction is against the manifest weight and sufficiency of the evidence. Specifically, appellant argues that the state failed to prove any of the three subdivisions set forth in the offense of inducing panic.
 {¶ 38} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a "thirteenth juror," weighing the evidence in order to determine whether the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52. However, the appellate court must bear in mind the trier of fact's superior, first-hand perspective in judging the demeanor and credibility of witnesses.State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. The power to reverse on manifest weight grounds should be used only in exceptional circumstances where the evidence weighs heavily against conviction. Thompkins at 387.
 {¶ 39} A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to *Page 12 
the jury or to sustain the verdict as a matter of law. Id. The proper test to apply to such an inquiry is whether the evidence admitted at trial, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St. 3d 259, paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id.
 {¶ 40} The statutory definition of the offense of inducing panic is set forth in our discussion of the first assignment of error.
 {¶ 41} The victim testified that appellant threw her against a wall and pinned her on a bed. She stated that appellant also grabbed a loaded gun from a duffle bag and held it to his head, threatening to commit suicide. She testified that when appellant suspected she might call the police, he stated that, if the police came, he would come out shooting. She testified that after they returned home from taking the cat to the vet, appellant again became concerned that she might call the police. As she attempted to leave the apartment, appellant locked the door behind her, told her he was not going to let her leave and remained concerned about police involvement. The victim and Patrolman Kemp testified that, when the police arrived, the victim told police that appellant had threatened to come out shooting at the police because he had nothing to lose. Officers testified that, because of the threat of safety to the neighborhood, they cleared the walkway, diverted residents, canvassed the neighborhood to attempt to locate appellant and sent bulletins to other law enforcement jurisdictions regarding the threat of violence against responding officers. *Page 13 
 {¶ 42} Based on this testimony, we cannot find that the jury lost its way and created a manifest miscarriage of justice. The uncontroverted evidence in this case established that appellant threatened to come out shooting if the police were called. Based on this threat, when the police responded they took precautions out of concern for their safety and the safety of others in the area. While appellant challenged the victim's credibility regarding details such as the time events occurred and the location of the duffle bag in the apartment, and challenged whether the police behaved reasonably based on the statement of just one witness, we cannot find that the credibility of the witnesses was so undermined as to render the decision unreliable and against the manifest weight of the evidence.
 {¶ 43} As to the claim that the judgment is against the sufficiency of the evidence, the testimony outlined above demonstrates that the state presented evidence which, if believed by the jury, supported every essential element of the offense. The officer's testimony supported a finding that the public was inconvenienced by appellant's conduct because they had to lockdown the apartment walkway and divert residents to secure the area. The officers testified that they were required to take such action because of the threat relayed to them by the victim. The threat was, if the police came, appellant would come out shooting. The victim testified that appellant made this threat, to come out shooting, if she called the police. And she had witnessed him holding a gun, which she knew to be loaded, to his head. The judgment is not against the sufficiency of the evidence.
 {¶ 44} The second assignment of error is overruled. *Page 14 
 III {¶ 45} In his third assignment of error, appellant argues that his trial attorney was ineffective for stipulating to the admission of drugs, failing to require appellee to elect among the three subsections of the offense of inducing panic and failing to object to the defective jury instruction for inducing panic.
 {¶ 46} In order to prevail on a claim of ineffective assistance of counsel, the appellant must demonstrate both deficient performance and prejudice resulting from such performance. Strickland v. Washington
(1984), 466 U.S. 668, 687. To establish prejudice, the appellant must show that counsel's errors were so serious that there exists a reasonable probability that in the absence of those errors, the result of the trial would have been different. State v. Bradley (1989),42 Ohio St.3d 136. In Ohio, a properly licensed attorney is entitled to a strong presumption that his or her duties have been performed in an ethical, reasonable and competent manner. State v. Hamblin (1988),37 Ohio St.3d 153, 155-56; State v. Sallie, 81 Ohio St.3d 673, 675, 1998-Ohio-343.
 {¶ 47} Appellant first argues that counsel was ineffective for stipulating to the admission of the marijuana found in the safe and in the duffle bag. When Ptl. Kemp testified that he found a piece of aluminum foil folded into the shape of a pipe with a marijuana smell to it in the safe in the garage, counsel objected. The objection was overruled. Tr. 69. Counsel did not object when the officer testified that he found a baggie of marijuana in appellant's green duffle bag. Tr. 70. Counsel did object when the officer testified that the tests on the baggie and the pipe at the crime lab came back *Page 15 
positive for marijuana on the basis that the officer was testifying to results he had no hand in. Tr. 72. The objection was overruled.
 {¶ 48} At a later point in the trial, the court asked counsel for appellant to put her motions in limine and arguments, which she had previously discussed with the court, on the record. Counsel stated that she wanted to put on the record that, after hearing that the court was inclined to allow the drugs into evidence, she did stipulate to allowing testimony of the drugs. Tr. 85. The court stated that, with respect to the motions in limine concerning admission of drugs and weapons, the court had indicated to counsel earlier that the motions would be denied and the testimony would be allowed.
 {¶ 49} The jury clearly believed the victim's testimony that appellant threw her against the wall and on the bed in convicting appellant of domestic violence, because no one else testified concerning the incidents that led to that charge. As discussed in the second assignment of error, the conviction for inducing panic was supported by the evidence. The testimony concerning the officer's discovery of marijuana was brief, and appellant's counsel did object concerning the admission of the pipe. We cannot find that the result of the proceeding would have been different had counsel not stipulated to the remainder of the drug evidence. And, even if the marijuana evidence had not been admitted, we do not find that the results of the proceeding would have been different.
 {¶ 50} Appellant next argues that counsel was ineffective for failing to require appellee to elect one of the three subsections of inducing panic. As discussed in the first assignment of error, it is clear from the record that the state was proceeding under subsection (2), and all the evidence concerning the offense went to that subsection. The complaint does not specify a subsection, but the "to wit" section of the complaint *Page 16 
states that appellant told his girlfriend to call the police and he would come out shooting, he had nothing to lose, and he would go down shooting. The complaint states that his actions and statements caused a multi-jurisdiction notification of an armed suicidal person at large and caused police to alert tenants in the apartment complex of the situation. The record does not demonstrate that had counsel moved for the state to elect a subsection, the result of the proceeding would have been different, as counsel was put on notice of the state's theory of the case in the complaint, and the state presented no theory or evidence to support a different subsection of inducing panic at trial.
 {¶ 51} Finally, appellant argues that counsel was ineffective for failing to object to the jury instruction concerning inducing panic. While the instruction was erroneous, as discussed in assignment of error one above, the faulty instruction did not affect the outcome of the trial and constitute plain error. For the same reasons, appellant cannot demonstrate that the result of the proceeding would have been different had counsel objected.
 {¶ 52} The third assignment of error is overruled.
 IV {¶ 53} In his fourth assignment of error, appellant argues that the trial court's failure to address appellant and give him an opportunity to speak prior to sentencing constitutes reversible error.
 {¶ 54} Crim. R. 32(A)(1) provides: *Page 17 
 {¶ 55} "(A) Imposition of sentence. Sentence shall be imposed without unnecessary delay. Pending sentence, the court may commit the defendant or continue or alter the bail. At the time of imposing sentence, the court shall do all of the following:
 {¶ 56} Afford counsel an opportunity to speak on behalf of the defendant and address the defendant personally and ask if he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment."
 {¶ 57} The right of a defendant to make a final statement prior to sentencing, usually called the right of allocution, applies to both misdemeanor and felony convictions. Defiance v. Cannon (1990),70 Ohio App.3d 821, 828. In a case where the trial court imposed sentence without first asking the defendant whether he wished to exercise the right of allocution created by Crim. R. 32(A), re-sentencing is required unless the error is invited error or harmless error. State v.Campbell, 90 Ohio St.3d 320, paragraph three of the syllabus,2000-Ohio-183.
 {¶ 58} In this case, neither counsel nor appellant were offered an opportunity to speak prior to sentencing.
 {¶ 59} Invited error is error the defendant induced or was actively responsible for causing. Id. at 324. Nothing in the record suggests that appellant invited the error. The court moved directly from the verdict to sentencing without asking appellant if he had anything to say before sentencing.
 {¶ 60} Appellee argues that this assignment of error is moot because appellant has served the full 180 days of his sentence for domestic violence and the trial court suspended the remaining days of his sentence for inducing panic. However, by supplemental order filed December 13, 2007, following appellant's request for early *Page 18 
release, the court placed appellant on community control for two years. Therefore, the issue is not moot.
 {¶ 61} Appellee also argues that the error is harmless. Appellee relies on State v. Reynolds (1998), 80 Ohio St. 3d 670, 684, where the Ohio Supreme Court held that a court's error in failing to ask a defendant if he wants to make a statement prior to sentencing is not prejudicial where the defendant makes an unsworn statement in the penalty phase, sends a letter to the trial court, and counsel makes a statement on behalf of the defendant. Appellee argues that the facts are similar in the case before this Court because the record demonstrates that several unsworn statements from appellant were admitted in the form of audio recordings of telephone messages which appellant left for the victim on the night of the incident. Appellee relies on the following excerpt of those recordings in support of its claim:
 {¶ 62} "I guarantee though, Kim, if anything happens to me I'm going to ruin your fuckin' life. Trust me. You might not think I'm capable, but I will. I suggest you don't fuck with me anymore, or I'll create a problem for you you won't believe. And that's not no threat. I'm just telling you verbally I won't (Word unintelligible). I will fuckin' ruin your life." Tr. 45.
 {¶ 63} The profanity-laced telephone messages appellant left for his ex-girlfriend on the night of their breakup are not the type of unsworn statements within the contemplation of Reynolds or Crim. R. 32(A)(1), which provides for the defendant to make a statement in his own behalf or in mitigation of punishment. The angry telephone calls transcribed in the record and presented by the state as evidence against appellant do not render the court's denial of appellant's right of allocution harmless. *Page 19 
 {¶ 64} Because appellant was not given an opportunity to speak prior to sentencing and the error is not moot, invited error or harmless error, the fourth assignment of error is sustained.
 {¶ 65} The judgment of the Canton Municipal Court is affirmed as to convictions of one count of domestic violence and one count of inducing panic. The judgment of sentence is reversed and remanded to the trial court for re-sentencing in accordance with our decision as to appellant's fourth assignment of error.
Edwards, J., Hoffman, P.J., and Delaney, J., concur. *Page 20 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Canton Municipal Court is affirmed in part, and reversed and remanded in part. Costs assessed to appellant. *Page 1