[Cite as *State v. Geary*, 2016-Ohio-7001.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-160195 |
| | | TRIAL NO. 14CRB-34322B |
| Plaintiff-Appellee, | : | |
| | | |
| vs. | : | *O P I N I O N.* |
| | | |
| BRANDON GEARY, | : | |
| | | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed in Part, Sentence Reversed in Part, and
Cause Remanded

Date of Judgment Entry on Appeal: September 28, 2016

*Paula Boggs Muething*, City Solicitor, *Natalia Harris*, City Prosecutor, and *Christopher Liu*, Assistant City Prosecutor, for Plaintiff-Appellee,

*Raymond T. Faller,* Hamilton County Public Defender*,* and *Demetra Stanatakos*, Assistant Public Defender, for Defendant-Appellant.

**FISCHER, Presiding Judge.**

{¶1} Defendant-appellant Brandon Geary was charged by complaint with one count of disorderly conduct in violation of R.C. 2917.11(A)(4) and one count of inducing panic in violation of R.C. 2917.31(A)(3) in connection his participation in a protest on Interstate 75. Geary's case proceeded to a jury trial where the state presented testimony from three police officers generally describing Geary's involvement in an 80-100 person protest that had caused police to completely shut down the interstate for 15-30 minutes to remove the protestors. Geary and two other protestors testified for the defense. The jury acquitted Geary of disorderly conduct, but convicted him of inducing panic. The trial court sentenced Geary to three days in jail, credited him with time served, and imposed $858 in court costs. Geary filed a Crim.R. 29(C) motion for an acquittal and/or a Crim.R. 33(A)(4) motion for a new trial, which the trial court denied.

{¶2} Geary now appeals. He challenges the sufficiency and weight of the evidence adduced at his jury trial to support his inducing-panic conviction, the trial court's jury instructions, and the trial court's imposition of court costs. Because the trial court imposed court costs of $858 in the judgment entry without announcing the imposition of court costs at the sentencing hearing, we reverse the trial court's judgment with respect to court costs and remand the matter to the trial court for the limited purpose of allowing Geary to move the trial court for a waiver of the payment of court costs. We otherwise affirm the trial court's judgment.

### Jury Instructions

{¶3} We begin our analysis by addressing Geary's third assignment of error. In his third assignment of error, Geary argues the trial court erred in instructing the jury

on the law relating to inducing panic and the First Amendment, which formed the basis of Geary's defense.

### *Inducing-Panic Instruction*

{¶4} The record reflects that Geary was charged by complaint with inducing panic under R.C. 2917.31(A)(3), which provides that "[n]o person shall * * * cause serious public inconvenience by * * * committing any offense with reckless disregard of the likelihood that its commission will cause serious public inconvenience or alarm."

{¶5} Thus, "committing any offense" is an essential element of inducing panic that must be proven beyond a reasonable doubt. *See In re P.T.,* 12th Dist. Clinton No. CA2013-02-006, 2013-Ohio-3881, ¶ 26; *State v. Weber*, 5th Dist. Stark No. 2007 CA 00334, 2009-Ohio-1344, ¶ 29.

{¶6} Here, the record reflects that the complaint specified a violation of R.C. 2917.31(A)(3), but it did not specifically identify a predicate offense by statute number. Rather it provided:

> Inducing panic: R.C. 2917.31(A)(3):
>
> P. Stoup, 177, being first duly cautioned and sworn, deposes and says that Brandon Pierce Geary, on or about the 25th day of November 2014, in Hamilton County, State of Ohio, did cause serious public inconvenience or alarm, to-wit walking on I-75 preventing flow of traffic, by committing an offense, with reckless disregard of the likelihood that its commission will cause serious public inconvenience or alarm, contrary to and in violation of Section 2917.31 of the Revised Code of Ohio, a misdemeanor of the first degree.

3

The complainant states that this complaint is based on arrested walked [sic] onto roadway impeding the normal flow of traffic and refused [sic] to exit roadway when ordered to do so by police.

{¶7} Geary sought a bill of particulars, but the city did not respond. Geary, however, did not move to dismiss the complaint. Rather, he proceeded to trial on the theory that the complaint had charged persistent disorderly conduct as the predicate offense for the inducing-panic charge. In opening statement, the state argued that the predicate offense for inducing panic was jaywalking.

{¶8} The state and Geary disagreed throughout the trial as to the predicate offense for inducing panic. During a discussion of the proposed jury instructions, the parties continued to disagree as to how the jury should be charged. Defense counsel asserted that because persistent disorderly conduct and inducing panic were the charged offenses, and the complaint for inducing panic alleged facts consistent with persistent disorderly conduct, the jury should be instructed on persistent disorderly conduct as the predicate offense. The city argued that the complaint charged a jaywalking violation, and pointed to the language within the text of the complaint that supported this assertion. The trial court gave defense counsel the option to use either the exact verbiage of the complaint or the more precise language of R.C. 4511.50(B), but Geary's counsel insisted that disorderly conduct serve as the predicate offense. The trial court ultimately charged the jury based on the language in the complaint.

{¶9} The trial court instructed the jury:

The defendant is charged with inducing panic. Before you can find the defendant guilty, you must find beyond a reasonable doubt that on or about the 25th day of November 2014, and in the City of

4

Cincinnati, Hamilton County, Ohio, the defendant caused serious public inconvenience by walking on I-75 and preventing the flow of traffic with reckless disregard of the likelihood that its commission would cause serious public inconvenience.

{¶10} "Due process requires that the state establish beyond a reasonable doubt every fact necessary to constitute the crime charged." *State v. Lynn*, 129 Ohio St.3d 146, 2011-Ohio-2722, 950 N.E.2d 931, ¶ 15. "As a general rule, a defendant is entitled to have the jury instructed on all the elements that must be proved to establish the crime with which he is charged * * *." *State v. Adams*, 62 Ohio St.2d 151, 153, 404 N.E.2d 144 (1980). A trial court's failure to include all the elements of an offense in a charge to the jury is error. *See Adams*; *see also* R.C. 2945.11.

{¶11} If the defendant has preserved the error in the trial court, the appellate court reviews the error under the harmless-error standard under Crim.R. 52(A). *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 15; *see State v. Neder*, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (holding that the omission of an element of an offense from a jury instruction did not fall within the limited category of constitutional errors that defy analysis by harmless-error standards). Crim.R. 52(A) defines harmless error and states that "any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." Under the harmless-error standard, the government must show that the error did not affect the substantial rights of the defendant. If the government does not make this showing, then the appellate court has no discretion to disregard the error, but must reverse the conviction. *Perry* at ¶ 15.

{¶12} The jury instruction on inducing panic did not identify a specific predicate offense by statute number or list the elements of that offense. The question

is whether this is harmless error. Geary argues that the insertion of the language from the complaint, "walking on I-75 and preventing the flow of traffic," was prejudicial because that same conduct described elements of persistent disorderly conduct, which easily confused and misled the jury because they had been told the predicate offense for inducing panic was jaywalking. Geary contends that without a proper definition, the jury was left to conclude that "walking on I-75 and preventing the flow of traffic" was an offense in and of itself, which is not a correct statement of the law. Thus, the jury could not have found him guilty of inducing panic as instructed by the court. As a result, he asks this court to reverse his conviction and remand for a new trial.

{¶13} The city argues that while the jury instruction on inducing panic could have more precisely defined the predicate offense, it adequately described an offense. The city argues that "walking on I-75 and preventing the flow of traffic" satisfies the "committing any offense" element because it adequately describes the offense of "Pedestrian Walking in Roadway" in violation of R.C. 4511.50(B). R.C. 4511.50(B) provides that "any pedestrian walking along and upon a highway shall walk only on a shoulder, as far as practicable from the edge of the roadway." The city further asserts that the trial court gave Geary the option to use either the exact verbiage of the complaint or the more precise language of R.C. 4511.50(B), but that Geary's counsel insisted that disorderly conduct serve as the predicate offense. The trial court decided to insert the language in the complaint.

{¶14} We agree with the city that the failure to correctly instruct the jury on the law was harmless error that did not affect Geary's substantial rights. The city's theory of the case with respect to the inducing-panic charge, as revealed during opening statement, was that Geary had committed the offense of jaywalking by

walking on the interstate. The city argued that Geary's presence on the interstate caused it to be shut down for 15-30 minutes. The evidence demonstrated beyond a reasonable doubt that Geary had walked on the interstate. A police officer testified that he had told protestors numerous times that it was a violation of law to walk on the interstate yet the protestors remained on the interstate. Another police officer testified that he had personally seen Geary walking among protestors in a lane of travel on the interstate after the commands to leave the interstate had been given. Geary himself admitted that there was a shoulder along the interstate, but that he had walked and then kneeled in the lane of travel. Thus, we cannot say that but for the failure to give a more concise jury instruction the outcome of the trial would have been different. Accordingly, we conclude the trial court's failure to specifically identify R.C. 4511.50(B) as the predicate offense in the jury instruction was harmless error.

### *First Amendment Instruction*

{¶15}    Geary next contends that the trial court erred by including an excerpt from *Cox v. New Hampshire*, 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed.2d 1049 (1941), as part of the jury instruction on the First Amendment.

{¶16}    The trial court gave the jury the following instruction on the First Amendment:

> The First Amendment protects free speech. The State cannot prosecute someone for exercising his right to free speech. The law applicable to this case is that protests of allegations of police misconduct are protected speech and are protected by the First Amendment and the defendant cannot be convicted of such activity.

However, where a restriction of the use of highways in that relationship is designed to promote the public convenience and the interest of all, it cannot be disregarded by the attempted exercise of some civil right which in other circumstances would be entitled to protection.

{¶17}   Geary does not challenge the first paragraph of the jury instruction, which he proposed and the trial court adopted. Rather, he challenges only the second paragraph of the instruction, which the trial court adopted from the language in *Cox,* over the objection of Geary's counsel.

{¶18}   During the trial, Geary's counsel objected to this portion of the instruction, arguing that the trial court should not include this language because *Cox* had addressed a New Hampshire statute.  In that case, the defendants, who had been convicted of having a parade or procession on a public street without a special license, challenged the validity and power of the licensing authority pursuant to the statute under the First and Fourteenth Amendments.  The United States Supreme Court held that the statute was a reasonable regulation of "time, place, and manner in relation to the other proper uses of the streets." *Cox*, 312 U.S. at 576, 61 S.Ct. 762, 85 L.Ed.2d 1049.  The trial court asked Geary's counsel to propose alternative language to the instruction, but Geary's counsel refused to do so, claiming the first paragraph should stand alone.

{¶19}   Geary argues now, without citation to any authority, that such time, place, and manner restrictions on expressive conduct are relevant only where the constitutionality of a statute is questioned on First Amendment grounds.  He contends that because he did not challenge the constitutionality of any Ohio statute

on First Amendment grounds, *Cox* is inapplicable and the trial court, therefore, erred in providing the jury with this portion of the instruction. We disagree.

{¶20} Ohio courts, including this court, have uniformly recognized in criminal cases that "the First Amendment has never conferred an absolute right to engage in expressive conduct whenever, wherever, and in whatever manner a speaker may choose." *See State v. Condon*, 152 Ohio App.3d 629, 2003-Ohio-2335, 789 N.E.2d 696, ¶ 23 (1st Dist.), quoting *Cincinnati v. Thompson*, 96 Ohio App.3d 7, 16, 643 N.E.2d 1157 (1st Dist.1994); *State v. Amireh*, 4th Dist. Athens Nos. 15CA14, 15CA15 and 15CA16, 2016-Ohio-1446, ¶ 18-20. Rather, they have recognized that when such conduct is imbued with communicative elements that would fall within the First Amendment, the conduct is subject to time, place, and manner restrictions. *Condon* at ¶ 23.

{¶21} For example, in *Thompson*, this court concluded that abortion protestors had no right to trespass upon private property to express their views after medical personnel had asked them to leave. *Thompson* at 16-18. Likewise, in *City of Cleveland v. Egeland*, 26 Ohio App.3d 83, 86, 497 N.E.2d 1383 (8th Dist.1986), the Eighth Appellate District concluded that a protestor's conscientious belief in the importance of protesting nuclear warfare did not provide him with a lawful purpose to obstruct a roadway. In reaching its conclusion, the Eighth District expressly relied on the United States Supreme Court's opinion in *Cox*. *Id.*

{¶22} Thus, contrary to Geary's assertions, the second paragraph of the instruction was not an improper statement of the law. Nor was the instruction unnecessary based on the facts in this case. Geary's counsel argued throughout the trial that he had a right to exercise his First Amendment right to free speech. Had the trial court just given the first part of the instruction, the jury could have

9

concluded that Geary's First Amendment rights rendered his conduct immune from prosecution and that he was automatically entitled to a verdict of acquittal.

{¶23} Geary further argues that the instruction prejudiced and misled the jury as evidenced by the following jury question: "Where did the highway decision to the First Amendment come from? What was the basis?" But the record reflects that Geary's counsel invited such an inquiry when she asked the jury during closing argument to question where the law had come from that would restrict Geary's First Amendment rights in relation to the use of the highways because the state had not presented evidence of any such law in its case.

{¶24} Because the challenged jury instruction on the First Amendment was a proper statement of the law, we cannot conclude the trial court erred in providing this instruction to the jury. We, therefore, overrule the third assignment of error.

### *Sufficiency of the Evidence*

{¶25} In his first assignment of error, Geary contends that the evidence was insufficient to sustain his conviction for inducing panic. He argues that the city failed to prove that (1) he had acted with reckless disregard that his actions would cause a serious public inconvenience, (2) he had caused a serious public inconvenience, or (3) had committed any offense.

{¶26} R.C. 2901.22(C) provides that a person acts recklessly when "with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature."

{¶27} All three police officers testified that a group of 80-100 protestors had walked on Interstate 75. Although two of the officers were at the back of the protest, the third officer testified that he had warned the protestors by loudspeaker as they approached the entrance ramp to the interstate not to enter the highway and that

police cruisers were positioned at the bottom of the entrance ramp to block the protestors from entering the interstate. Once the protestors had entered the interstate, the officers shut down the interstate. Two officers had then utilized the public address systems in their vehicles to make at least four to six, and up to a dozen, announcements telling the protestors to leave the highway. When the protestors did not leave the highway, it remained closed to the public for 15-30 minutes so the protestors could be removed from the interstate. Officer Ostermann testified that he saw Geary on the interstate at the time of the second announcement.

{¶28} The jury could have found that Geary acted recklessly by walking past the police who were blocking the entrance ramp to the interstate and then remaining on the highway. To the extent that Geary argues his actions and testimony support a different version of events, we address these arguments in the second assignment of error as they focus more on the weight of the evidence than its sufficiency.

{¶29} Geary also argues that the city failed to prove that he caused a "serious public inconvenience" because his conduct did not fall within the purpose of the inducing-panic statute. *See State v. Campbell,* 195 Ohio App.3d 9, 2011-Ohio-3458, 958 N.E.2d 622 ¶ 12 (1st Dist.) (holding that mere inconvenience to police officers was not the type of conduct the inducing-panic statute was intended to prohibit).

{¶30} Because the term "serious public inconvenience" is not defined in the statute, Geary relies on the 1973 committee comment to H.B. 551, which amended R.C. 2917.31. The comment provides that "the overall goal of the offense of inducing panic was primarily to avoid the harm which may result from the panic." It then provides examples of false bomb threats, deceptively causing a meeting to be cancelled due to a threat, and a free-for-all bar fight. Geary argues that because there

was no evidence he made a false threat, deceptively caused the police to block traffic, or engaged in violent behavior that caused people to flee from violence, as referenced in the comments to the inducing-panic statute, the state failed to prove he caused a serious public inconvenience.

{¶31} We disagree. The comments are merely illustrative and not exhaustive of conduct that may cause "serious public inconvenience." Here, the state produced sufficient evidence that Geary caused a serious public inconvenience when he and 80 to 100 protestors marched on Interstate 75 during the rush hour in the middle of downtown Cincinnati and sat down in the lane of travel. Geary and the other protestors' presence on the highway caused the police to shut down the interstate for 15 to 30 minutes until he and the other protestors could be removed, thereby inconveniencing all the motorists on northbound Interstate 75. *See, e.g., State v. Andrew*, 1st Dist. Hamilton No. C-110141, 2012-Ohio-1731, ¶ 6 (defendant's actions in firing a gun at pursuing officers, causing four residential streets to be closed and a store to be evacuated, was sufficient evidence that defendant had acted with reckless disregard and had caused serious public inconvenience and alarm). Thus, the state presented sufficient evidence to show that Geary had caused a serious public inconvenience.

{¶32} Geary next asserts that the state failed to prove that he had committed the predicate offense for inducing panic. Geary argues that if the predicate offense for inducing panic was R.C. 4511.50(B), "pedestrian in the roadway," the statute could not serve as the predicate offense because it is a statute of general conduct. He cites *State v. Clancy*, 2d Dist. Montgomery No. 18844, 2002-Ohio-1881, as support for his position, but that case did not address a similar matter. Moreover, Geary's argument that R.C. 4511.50(B) could not serve as the predicate

12

offense for inducing panic would seem to contradict the plain language of R.C. 2917.31(A)(3), which provides that "any" offense may serve as the predicate offense.

{¶33} Finally, we address Geary's argument that the state could not proceed with R.C. 4511.50(B) as the predicate offense for the inducing-panic charge, without amending the complaint in violation of his due-process rights. Crim.R. 7(D) addresses amendments to criminal complaints. It provides that "[t]he court may at any time before or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged." The Ohio Supreme Court has held that "[a]n indictment, which does not contain all the essential elements of an offense, may be amended to include the omitted element, if the name or the identity of the crime is not changed, and the accused has not been misled or prejudiced by the omission of such element from the indictment." *State v. O'Brien*, 30 Ohio St.3d 122, 508 N.E.2d 144 (1987), paragraph two of the syllabus.

{¶34} The purpose of an indictment is to give notice to an accused of "that which he may expect to meet and be required to answer; so that the court and jury may know what they are to try, and the court may determine without unreasonable difficulty what evidence is admissible." *Horton v. State*, 85 Ohio St. 13, 19, 96 N.E. 797 (1911); *see State v. Sims*, 1st Dist. Hamilton Nos. C-150252 and C-150253, 2015-Ohio-4996, ¶ 15 ("the purpose of a charging instrument, such as a complaint is to give the defendant adequate notice of the charge").

{¶35} In *Sims*, the defendant argued that the trial court erred in convicting him of first-degree-misdemeanor criminal damaging where the affidavit, the complaint, and the judgment of conviction did not contain the degree of the offense

or the additional element elevating the offense. We held that even though the complaint did not contain the degree of the offense and the state had failed to track the language of the statute with regard to the element of creation of a risk of physical harm to a person, these omissions did not rise to the level of plain error because the complaint contained the facts necessary to put Sims on notice that the aggravating element applied. *Id.* at ¶ 17.

{¶36} Here, the failure to list the predicate offense in the complaint does not rise to the level of plain error. Geary was on notice that the behavior at issue was his walking on Interstate 75 and failing to leave when the police asked him to do so. During opening argument, the city prosecutor told the jury that jaywalking was the predicate offense for the inducing-panic charge. Geary's defense in this case was not that he did not walk on Interstate 75, it was that he did not hear the warnings that he should not enter the highway or leave it. As a result, we find Geary's argument meritless. We, therefore, overrule his first assignment of error.

### Manifest Weight of the Evidence

{¶37} In his second assignment of error, Geary challenges the weight of the evidence adduced to support his conviction.

{¶38} To reverse a conviction on the manifest weight of the evidence, this court must review the entire record, weigh the evidence, and all reasonable inferences, consider the credibility of the witnesses, and conclude that, in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice in finding the defendant guilty. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶39} Geary argues the jury lost its way in finding him guilty of inducing panic for many of the same reasons enumerated under his sufficiency challenge. He

14

first argues that the jury lost its way in finding that he had acted recklessly and that he had caused a serious public inconvenience given the defense testimony precluding such findings. But any discrepancies in the testimony between the state's witnesses and the defense witnesses regarding the timing of the warnings for the protestors to leave the interstate and the closing of the interstate were matters of credibility for the jury to decide. The jury was entitled to accord more weight to the officers' testimony than to the testimony provided by Geary and the two other protestors. *See State v. Railey*, 1st Dist. Hamilton No. C-130307, 2012-Ohio-4233, ¶ 14.

{¶40} Geary also argues the jury lost its way in convicting him of inducing panic because there was no evidence that serious public inconvenience resulted from a false alarm, threat, or deception that caused people to flee from violence. But, as discussed under our sufficiency analysis, the presence of a false alarm, threat, or deception is unnecessary to support a conviction for inducing panic under R.C. 2917.31(A)(3). Thus, the jury could have found Geary and the other protestors' presence on the highway caused the police to shut down the interstate for 15 to 30 minutes until he and the other protestors could be removed, thereby inconveniencing all the motorists on northbound Interstate 75.

{¶41} Finally, Geary argues that his acquittal of disorderly conduct renders his conviction for inducing panic against the sufficiency and the manifest weight of the evidence. Geary argues that because disorderly conduct served as the predicate offense for the inducing-panic conviction, it makes no sense that he could be acquitted of the predicate offense, but convicted of the compound offense. But because the predicate offense for inducing panic was jaywalking, there is no inconsistency in the verdicts. We, therefore, find Geary's argument meritless, and we overrule his second assignment of error.

15

### *Court Costs*

{¶42} In his fourth and final assignment of error, Geary argues the trial court violated Crim.R. 43(A) by imposing court costs of $858 in the judgment entry when it failed to address the imposition of court costs at the sentencing hearing.

{¶43} As a preliminary matter, we address the city's argument that Geary is precluded from challenging the imposition of court costs because he did not identify the trial court's judgment of conviction in the notice of appeal. Instead the city argues that Geary only identified the trial court's entry denying his posttrial motions. App.R. 4(B)(3) tolls the time for filing a notice of appeal until the trial court has ruled on all posttrial motions, including a motion for a new trial. *See State v. Smith*, 1st Dist. Hamilton Nos. C-080712 and C-090505, 2009-Ohio-6932, ¶ 12. Geary's appeal from the final entry in his case, the trial court's entry denying his posttrial motions, would not preclude him from appealing the earlier judgment of conviction. With respect to the content of the notice of appeal, the Ohio Supreme Court has held that an error or defect in the notice of appeal, such as failing to specify the order from which the appeal is taken, does not divest the court of appeals of jurisdiction. *See Maritime Mfrs., Inc. v. Hi-Skipper Marina*, 70 Ohio St.2d 257, 436 N.E.2d 1034 (1982); *Roberts v. Skaggs*, 176 Ohio App.3d 251, 2008-Ohio-1954, 891 N.E.2d 827, ¶ 6-9 (1st Dist.); *see also Jenkins v. Hill*, 4th Dist. Meigs No. 14CA4, 2015-Ohio-118.

{¶44} We thus turn to the merits of Geary's argument. The Ohio Supreme Court has held that a trial court's failure to address court costs and fees at the sentencing hearing and to then impose them in the journal entry is reversible error that requires a remand for the limited purpose of remedying the error. *State v.*

*Joseph*, 125 Ohio St.3d 76, 2010-Ohio-954, 926 N.E.2d 278, ¶ 12, 13 and 22; *State v. Throckmorton*, 126 Ohio St.3d 55, 2010-Ohio-2693, 930 N.E.2d 311; *see State v. Carpenter*, 1st Dist. Hamilton No. C-140423, 2015-Ohio-1615, ¶ 40-41 (following *Joseph*). In *Joseph*, the state had argued that any error was harmless, but the Supreme Court disagreed. It held that Joseph was harmed because he was "denied the opportunity to claim indigency and to seek a waiver of the payment of court costs before the trial court" and that "he should have that chance." *Joseph* at ¶ 22.

{¶45} The record reflects that the trial court did not discuss the imposition of court costs at the sentencing hearing. Whether the trial court or the clerk ministerially imposed the court costs following the sentencing hearing, the reality is that Geary had no opportunity to claim indigency and to seek a waiver of the payment of those costs where he was sentenced immediately following the trial and court costs were never discussed during the sentencing hearing.

{¶46} The city argues that any error by the trial court in failing to address Geary regarding court costs is harmless because the record reflects that Geary is not indigent and therefore, he is ineligible for a waiver of costs. The city points to defense counsel's statement during the sentencing hearing that Geary was currently working at Urban Outfitters, and Geary's testimony during the trial that he was working as a manager at Urban Outfitters. But Geary should have the opportunity in the first instance to present his claim for waiver of court costs to the trial court before it imposes those costs. *See Joseph* at ¶ 22; *Carpenter* at ¶ 41. As a result, we sustain Geary's fourth assignment of error. We, therefore, reverse the portion of Geary's sentence imposing court costs and remand this cause to the trial court for the limited purpose of allowing Geary to move the trial court in the first instance for a waiver of the payment of court costs. We affirm the trial court's judgment in all other respects.

Judgment affirmed in part, sentence reversed in part, and cause remanded.

**HENDON** and **CUNNINGHAM, JJ.,** concur.

Please note:

The court has recorded its own entry this date.

